UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:10-cr-110-T-24-EAJ

SAMUEL MANDARELLI

_____/

**ORDER**

This cause comes before the Court on Defendant Samuel Mandarelli's Motion to Suppress (Doc. 38). The Government has responded in opposition (Doc. 71). For the reasons stated below, Mandarelli's Motion to Suppress is DENIED.

**I.  Background**

Samuel Mandarelli was charged with unlawful possession of a firearm by a convicted felon after officers executed a search warrant at Mandarelli's rented home on December 15, 2009. (Doc. 38 ¶¶ 1-3). An affidavit of Special Agent Ignacio Esteban of the Bureau of Alcohol, Tobacco, Firearms, and Explosives supported the warrant, and on December 14, 2009, United States Magistrate Judge Thomas B. McCoun, III authorized the warrant. (Doc. 38 ¶¶ 2, 4). Detective Mike Jenkins and other members of the Pasco County Sheriff's Office assisted Agent Esteban in preparing the affidavit, and a confidential source provided much of the support for probable cause for the search warrant. (Doc. 38 ¶¶ 5-6). Mandarelli has moved to void the search warrant and to suppress the fruits of the search warrant, alleging that the affidavit for the search warrant contains material omissions and misstatements that defeat probable cause.

The affidavit states that on July 19, 2009, Pasco County Sheriff's Office deputies

1

responded to an overdose call at Mandarelli's residence in Hudson, Florida. (Doc. 38, Ex.1 ¶ 3). Upon arrival, Deputy Christopher Zick and Fire Rescue personnel observed Mandarelli lying on a couch. Id. Mandarelli was very lethargic and had difficulty speaking to Fire Rescue personnel. Id. Mandarelli informed them he had taken approximately ten Xanax and wanted to die. Id. Deputy Zick observed several firearms in the residence, including a black H&K .4 caliber semi-automatic pistol on the dresser in the bedroom. Id. Deputy Zick also observed a bolt action .308 rifle with a Remington scope leaning against the bedroom wall. Id. Since Deputy Zick did not know at the time that Mandarelli was a convicted felon, the officers left the firearms in the residence, and Fire Rescue personnel transported Mandarelli to a local hospital in Pasco County. Id.

Agent Esteban's affidavit also states the Paso County Sheriff's Office arrested Mandarelli for possession of marijuana on October 21, 2009. (Doc. 38, Ex. 1 ¶ 4). Several weeks before Mandarelli's October arrest, a confidential source—Samantha Troupe, who previously provided reliable information to law enforcement—told detectives from the Pasco County Sheriff's Office that Mandarelli usually had marijuana in his possession when he left his residence and was usually armed while driving his vehicle. Id. On October 21, 2009, Pasco County Sheriff's Office detectives observed Mandarelli driving without his seatbelt. Id. After pulling Mandarelli over, the officer smelled marijuana on Mandarelli's breath and found a marijuana cigarette inside the vehicle. Id. The officers found no firearms, but they arrested Mandarelli for possession of marijuana. Id.

The affidavit further states that in late November and early December 2009, the confidential source told detectives from the Pasco County Sheriff's Office that she observed

marijuana and two loaded handguns while inside Mandarelli's residence. (Doc. 38, Ex. 1 ¶ 5). The confidential source further advised law enforcement that Mandarelli uses marijuana in the residence and recently ordered chemicals and equipment to start growing and cultivating marijuana at his residence. Id.

Agent Esteban conducted a criminal records check of Mandarelli, which revealed Mandarelli has been convicted of two felonies punishable by imprisonment for a term exceeding one year. (Doc. 38, Ex. 1 ¶ 7). Agent Esteban also conducted a records check with the United States Department of Justice, Office of the Pardon Attorney, and determined that Mandarelli's rights to own, use, or possess a firearm had not been restored. (Doc. 38, Ex. 1 ¶ 8).

In an unrelated matter, Troupe testified in the murder trial of John Ditullio on December 10 and 11, 2009. (Doc. 38, Ex. 2). Troupe lived at a white supremacist compound in 2006 where she met Ditullio and Shawn Plott. (Doc. 38, Ex. 2 at 4). At Ditullio's trial, Troupe testified that when she was baby-sitting Plott's child around a year after the murder occurred, Plott told her he committed the murder with which Ditullio was charged. Id. at 17.

Troupe's testimony at Ditullio's trial revealed that she met Mandarelli in May of 2007 and lived with Mandarelli at the address for which the search warrant was issued. Id. at 3, 34. In his motion to suppress, Mandarelli also stated that Troupe was living with him and that they were involved in an "ongoing, but fickle, intimate romantic relationship" when the warrant was signed. (Doc. 38 at ¶¶ 11-12).

## II.   Standard of Review

In Franks v. State of Delaware, the United States Supreme Court established the standard for reviewing a warrant affidavit to determine whether a hearing should be held at the

defendant's request. 438 U.S. 154, 156 (1978). Affidavits supporting search warrants are presumptively valid. Id. at 171. A defendant is entitled to an evidentiary hearing on a motion to suppress based on alleged misrepresentations or omissions in a search warrant if the defendant makes a substantial preliminary showing that the affiant made false statements, either intentionally or with reckless disregard for the truth, pointing specifically to the portions of the affidavit claimed to be false. Id. at 155-56, 171. Moreover, the false statements have to be necessary to the finding of probable cause, and "allegations of negligence and innocent mistake are insufficient." Id. at 171. Furthermore, the affiant, not the non-governmental informant, must make the false statements. Id. The Franks Court explained "if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Id. at 171-72. However, if the remaining content is insufficient, the defendant is entitled to a hearing under the Fourth and Fourteenth Amendments. Id. at 172.

Therefore, to obtain a hearing, Mandarelli must show (1) that Agent Esteban knowingly or recklessly made the alleged misrepresentations or omissions, and (2) that by excluding the alleged misrepresentations and including the alleged omissions, there would have been no probable cause to support the search warrant. United States v. Novaton, 271 F.3d 968, 988 (11th Cir. 2001).

**III.   Motion to Suppress Evidence**

Mandarelli contests the probable cause of the search warrant on several grounds, none of which have any merit. Mandarelli's arguments are discussed in turn below.

4

A. *Failure to Mention Mandarelli's Romantic Relationship and Cohabitation with the Confidential Informant is Immaterial because the Informant's Potential Bias was Overcome by Independent Corroboration of the Information She Provided.*

Mandarelli claims it was a material omission that Agent Esteban did not reveal that the confidential informant was Samantha Troupe, Mandarelli's live-in girlfriend. In response, the Government states that Troupe's relationship with Mandarelli is irrelevant and unsupported by proof. Moreover, Agent Esteban omitted the fact that Troupe was living with Mandarelli to protect her identity and confidential status. Furthermore, including the fact that Troupe lived where she observed the marijuana and handguns would have strengthened the affidavit, not weakened it.

Disclosing Troupe's relationship and cohabitation with Mandarelli would have revealed her identity. The Supreme Court concluded in Franks that "the Due Process Clause of the Fourteenth Amendment did not require the State to expose an informant's identity routinely, upon a defendant's mere demand, when there was ample evidence in the probable-cause hearing to show that the informant was reliable and his information credible." 438 U.S. at 170. The affidavit states that Troupe provided reliable information to law enforcement in the past and discusses two specific bases of her reliability. First, several weeks before Mandarelli's arrest for marijuana, Troupe told law enforcement that Mandarelli usually had marijuana in his possession when he left his residence. When Mandarelli was stopped for driving without his seatbelt on October 21, 2009, officers found a marijuana cigarette inside his vehicle. Second, Troupe told law enforcement that Mandarelli is a former member of the Outlaw Motorcycle Gang. This information has been verified by the Pasco County Sheriff's Office from information gathered in the past. Moreover, a Pasco County Sheriff's deputy positively identified Mandarelli wearing a

black jacket with Outlaw M.C. patches in December 2008.

The Franks Court decided not to predetermine whether a court must require the identity of an informant to be revealed once there has been a substantial preliminary showing of falsity. Id. at 170; see also Williams v. Brown, 609 F.2d 216, 221 (5th Cir. 1980). Moreover, "judges are accustomed to dealing with information derived from informants and are well aware that such information is often obtained in the context of personal rancor and mixed motives," so failure to disclose information concerning possible bias on the part of the confidential informant is not per se problematic. Novaton, 271 F.3d at 988. Further, failure to disclose the informant's possible bias is less material if the agent corroborates much of the information provided by the informant. Id.

Agent Esteban had independent corroboration that there were guns in Mandarelli's residence. Deputy Zick saw guns in Mandarelli's possession when he responded to an overdose at Mandarelli's former residence in July 2009. Since disclosing Troupe's relationship with Mandarelli would reveal her identity, since Troupe had been reliable in the past, and since Agent Esteban had independent corroboration of Troupe's information, this omission was not material.

B.  *Troupe's Potentially Dishonest Testimony is Immaterial Because There is No Indication That Detective Jenkins Knew or Should Have Known that Troupe's Testimony was Untruthful, and Troupe's Information was Independently Corroborated.*

Mandarelli claims it was material that Agent Esteban did not reveal that Troupe testified for John Ditullio in his trial for First Degree Murder and Attempted Murder in December 2009, and that Troupe appears to have testified untruthfully about who committed that murder. Mandarelli also claims that Detective Jenkins—who both assisted Agent Esteban in investigating the offense presently alleged against Mandarelli and testified in Ditullio's trial—was aware of

Troupe's inconsistent statements made at Ditullio's trial and therefore knew of Troupe's questionable credibility. Further, Mandarelli claims that the State's cross-examination of Troupe in that trial elicited testimony that suggested she made false allegations to law enforcement officers in the past.[1]

In response to this claim, the Government states that Mandarelli's allegations are conclusory and unsupported. The Government argues that Mandarelli assumes Troupe's testimony was false, but nothing more than speculation or conjecture supports that allegation. Moreover, Mandarelli has not shown that Detective Jenkins disbelieved Troupe's testimony or that he questioned her credibility.

That Troupe's testimony in Ditullio's trial may be suspicious does not make its omission in the affidavit material. Even though the circumstances surrounding Troupe's testimony may be suspicious, Mandarelli offers no proof that Troupe testified falsely at Ditullio's trial. Moreover, Mandarelli must show that Agent Esteban, the affiant—not Troupe—made statements that were deliberately false or were made with reckless disregard for the truth. See Franks 438 U.S. at 171; Novaton, 271 F.3d at 988. Detective Jenkins assisted Agent Esteban in the preparation of

---

[1]The State's Cross-examination revealed that Troupe told law enforcement that her grandfather sexually abused her, and the State claimed Troupe later told Detective Seltzer that she lied about it. (Doc. 38, Ex. 2 at 36). However, Troupe denied telling anyone she lied about it and claimed her mother said she lied. Id. at 36-37. The State responded that her mother told law enforcement Troupe lied about another incident in February 2004 when Troupe claimed she entered an individual's vehicle, was provided with white pills, and gave a description of a black man. Id. at 37. The State had Troupe read a report of the incident and asked her "isn't it true that this person you made an allegation . . . against was unfounded because you made so many inconsistencies, none of your testimony could be believed." Id. at 38. Troupe responded, "That's what they said." Id. Regarding both of these previous incidents, Troupe denied lying about them, and the State did not directly impeach her, so there is no evidence that she lied or is unreliable. Id. at 36-38.

the affidavit, and "[o]bservations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." United States v. Ventresca, 380 U.S. 102, 111 (1965).

Additionally, there is no indication that Detective Jenkins knew or should have known that Troupe's testimony was untruthful. On cross examination in the Ditullio trial, Detective Jenkins agreed that he continued to use Troupe's information and continued to use her as a confidential informant. Detective Jenkins never said he did not believe Troupe, he just thought it was unusual that she did not tell him that she had witnessed someone confess to the murder for which Ditullio was on trial.

Even if this suspicious testimony and potentially false allegations made to law enforcement officers in the past weigh against Troupe's credibility, the Eleventh Circuit has held that when "unsavory information relating to the background of an informant was omitted from an affidavit, the warrant was still valid [when] the 'firsthand character' of the statements [is] coupled with independent corroboration of the information by another person." Madiwale v. Savaiko, 117 F.3d 1321, 1327 (11th Cir. 1997). Here, Troupe's information was "firsthand" because she was living with Mandarelli when she saw him possess the guns and marijuana. Additionally, Deputy Zick corroborates Troupe's information because he witnessed Mandarelli possess guns when he responded to the overdose call.

C.  *Discrepancy Regarding the Number of Guns and their Location in Mandarelli's Residence is Immaterial Because Mandarelli Does Not Contest the Existence of a Gun in His Residence and Insignificant Misrepresentations or Omissions Do Not Invalidate a Warrant.*

Mandarelli claims there were material misstatements and omissions regarding the number

8

and location of guns in his residence in the reports Deputies Zick and Preston DiVirgilis made after they responded to the July 19, 2009 overdose call at Mandarelli's residence. Deputy Zick, who is mentioned in the warrant affidavit, stated he "observed several firearms inside the residence," and specifically listed a .40 Caliber H & K handgun and a .308 Remington scope. Agent Esteban failed to mention Deputy DiVirgilis, whose report states, "Deputy Zick observed several firearms inside the bedroom." However, only one handgun was found in the bedroom.

Mandarelli also claims there are material misstatements in DiVirgilis's report regarding times and references to Mandarelli. DiVirgilis wrote his report immediately following the incident on July 19, 2009, and his report indicates the incident was reported on July 19, 2009 at 9:42 pm. His report also states he was dispatched on July 19, 2009 at 7:56 pm—an hour and forty-six minutes before it was reported—and the deputies arrived at 8:03 pm and cleared the call at 9:47 pm. DiVirgilis' report also misidentifies Mandarelli as "Michael" throughout the narrative. Furthermore, Zick's supplement was not submitted until September 15, 2009.

In response, the Government states Mandarelli does not allege that any of the information contained in the affidavit regarding the overdose call is false. Instead, Mandarelli attacks Agent Esteban's failure to mention DiVirgillis and points out minor discrepancies between DiVirgillis' and Zick's reports. The Government emphasizes that Deputies Zick and DiVirgilis were called to assist in an overdose, not a criminal investigation. Deputy DiVirgilis prepared a report on the date of the occurrence, noting Deputy Zick's observations, in accordance with Pasco County Sheriff's Office general procedure on a civil assist call, and Deputy Zick was later asked to prepare a supplemental report. The fact that Zick's report was written three months after the event does not affect the validity of the information provided by Agent Esteban about what Zick

9

observed. Moreover, Mandarelli seemingly misunderstood the "Reported Date" on the report to mean the time the incident was reported to the police, rather than the time the reporting officer completed his report. Even though Deputy DiVirgilis mistakenly refers to Mandarelli as "Michael," the report initially and correctly identifies the male as Samuel Mandarelli.

Primarily, Mandarelli takes issue with the discrepancies between the Deputies' reports pertaining to the number and location of the guns within Mandarelli's residence at the time of the overdose call. However, these discrepancies are not material because Mandarelli does not contest the existence of a gun in his residence, and the arrest for unlawful possession of a firearm by a convicted felon requires possession of only one gun. Moreover, the Deputies were serving different purposes during the call. DiVirgilis was interviewing Mandarelli to determine whether he was a danger to himself. Zick was securing the residence to make sure Mandarelli could not access anything to harm himself or the deputies. Deputy Zick, therefore, had firsthand knowledge of the number and location of the guns, which is probably why Zick's account of the incident is included in the affidavit and DiVirgilis's account is not.

The affiant in a search warrant must honestly believe the information to be true. Probable clause can be established by hearsay, information received from informants, and the affiant's own knowledge, which may sometimes be gathered hurriedly. Franks, 438 U.S. at 165. Further, "[i]nsignificant and immaterial misrepresentations or omissions will not invalidate a warrant." United States v. Sims, 845 F.2d 1564, 1571 (11th Cir. 1988).

Even if the inconsistencies within and between the Deputies' reports were included, these inconsistencies do not defeat probable cause. A reasonably prudent person would still believe "there is a fair probability that contraband or evidence of a crime will be found," Illinois v.

Gates, 462 U.S. 213, 238 (1983), because the Deputies agreed that there was at least one gun in the residence, which is arguably all that is needed for probable cause to search the residence in this case. Therefore, the Deputies' reports still provide sufficient corroboration of Troupe's statements such that exclusion or inclusion of these misstatements would not defeat probable cause.

D.  *Omission of the Confidential Informant's Alleged Criminal Background is Immaterial Because Troupe's Information was Independently Corroborated.*

Mandarelli claims it was a material omission that Agent Esteban failed to reveal that Troupe was accused of stealing $668 using her grandfather's ATM card, a crime involving dishonesty or false statement, and of Grand Theft of a Motor Vehicle, a third-degree felony.

The Government responds that Agent Esteban did not know about the police reports containing these allegations, and even if he had known, these uncharged, unsubstantiated allegations are not a sufficient basis to challenge Troupe's credibility. The failure to include two allegations against Troupe, both of which were several years old and neither of which resulted in an arrest or a conviction, was not intentional or reckless.

The failure to disclose these allegations is immaterial because the allegations have not resulted in an arrest or conviction, and the Eleventh Circuit has held that a warrant is still valid despite the omission of an informant's suspect background if the statements are of "firsthand character" and are independently corroborated by other information. Madiwale, 117 F.3d at 1327. Similarly, Troupe's information was "firsthand" because she was living with Mandarelli when she witnessed him possess guns, and her information is corroborated by the deputies who witnessed him possess guns when they responded to the July 2009 overdose call at Mandarelli's

11

former residence. Moreover, Mandarelli must show that Agent Esteban, not Troupe, made the omission. Novaton, 271 F.3d at 988. The Government claims Agent Esteban did not know about these police reports, and Mandarelli has not shown otherwise.

Even if Agent Esteban included the allegations that Troupe was once under investigation for stealing money from her grandfather and Grand Theft of Motor Vehicle in the affidavit, probable cause would still exist.

*E.     Identifying the Wrong Arresting Agency for a Prior Crime is Immaterial Because Insignificant Misrepresentations Will Not Invalidate a Warrant.*

Mandarelli claims the misstatement that he was arrested by the Pasco County Sheriff's Office on October 21, 2009 for being in possession of marijuana when he was actually arrested by the New Port Richey Police Department ("NPRPD"), which is in Pasco County, demonstrates wanton and willful disregard for the accuracy of the facts contained in the affidavit.

In response, the Government states that Agent Esteban merely misstated the arresting agency but that the misstatement was not intentional, nor was it done with reckless disregard for the truth. Mandarelli was stopped on the day of the arrest by both a marked NPRPD police unit and an unmarked Pasco County Sheriff's Office unit, but he was actually arrested by the NPRPD officer.

This misstatement is not material because it was an innocent mistake by Agent Esteban, and such mistakes are insufficient to defeat probable cause. See Franks, 483 U.S. at 171 ("Allegations of negligence or innocent mistake are insufficient."); Sims, 845 F.2d at 1571 ("Insignificant and immaterial misrepresentations or omissions will not invalidate a warrant.").

However, even if this misstatement were excluded, it would not destroy probable cause

because, despite which agency arrested Mandarelli in this prior offense, a reasonably prudent person would still believe that a gun would be found in Mandarelli's residence based on the testimony of Troupe and Deputies Zick and DiVirgilis.

## IV. Conclusion

Mandarelli has failed to show that Agent Esteban's affidavit contained knowingly reckless misrepresentations or omissions that would defeat probable cause. Therefore, a hearing is unnecessary and the Motion to Suppress (Doc. 38) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, this 6th day of May, 2010.

*Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record